UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SHEILA HACKERT, Individually, and as
Administratrix of the Goods, Chattels, and
Credits of William P. Hackert, Jr., and Christine
M. Hackert, Deceased; and JOHN ANTHONY
HACKERT,

                                    Plaintiffs,              1:03-CV-216

            vs

FIRST ALERT, INC.; and BRK BRANDS, INC.,

                                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.      JAMES L. FETTERLY, ESQ.
Attorneys for Plaintiffs                    SALLY M. SILK, ESQ.
Suite 2800
800 LaSalle Avenue
Minneapolis, MN 55402-3394

HACKER & MURPHY, LLP                        JAMES E. HACKER, ESQ.
Attorneys for Plaintiffs                    THOMAS D. BUCHANAN, ESQ.
7 Airport Park Boulevard
P.O. Box 104
Latham, New York 12110-0104

GOLDBERG SEGALLA LLP                        MATTHEW S. LERNER ESQ.
Attorneys for Defendants                    PETER L. POWERS, ESQ.
Suite 400
665 Main Street
Buffalo, New York 14203

DAVID N. HURD
United States District Judge

## MEMORANDUM DECISION and ORDER

## I. INTRODUCTION

Sheila Hackert and her son, John Hackert, (collectively, "plaintiffs") bring claims against First Alert, Inc. and BRK Brands, Inc. (collectively, "defendants") for conduct related to the manufacturing of fire detectors which failed to alarm during a fire at their home. The fire resulted in the destruction of the house and the deaths of Sheila Hackert's husband, William Hackert, and daughter, Christine Hackert.

Plaintiffs bring eight causes of action. Under the First and Second causes of action plaintiffs allege negligence and strict liability for a design defect in the product. These claims also include a failure to warn theory of liability. Under the Third and Fourth causes of action plaintiffs allege that the defendant breached implied and express warranties. Under the Fifth cause of action, plaintiffs bring a misrepresentation claim. The Sixth and Seventh causes of action state wrongful death claims. In the Eighth cause of action plaintiffs seek compensation for property damage suffered in the fire. John Hackert seeks damages for emotional distress. Finally, plaintiffs allege that they are entitled to punitive damages.

Pursuant to Fed. R. Civ. P. 56, plaintiffs move for partial summary judgment on the Second cause of action. Defendants cross-move for summary judgment pursuant to Fed. R. Civ. P. 56 on the following: the Second cause of action, including the failure to warn theory; the Fifth and Eighth causes of action; the emotional distress claim; and the issue of punitive damages. Oral argument was heard on September 29, 2005, in Utica, New York. Decision was reserved.

## II. **FACTS**

Plaintiffs describe William Hackert as very concerned about fire safety.  (Docket No. 113, Pls.'s Statement of Material Facts ("PSMF") ¶¶ 24 - 28.)  Accordingly, he prohibited candle burning in his home, regularly cleaned the fire detectors and changed the batteries. Id.  There were five fire detectors in the Hackert home at the time of the fire.  Two of them, one in the basement and one tucked in a drawer did not have batteries.  A third detector, one that plaintiffs claim was powered, was located in the stairwell of the home.  This detector was not manufactured by the defendants and is not at issue in this case.  The last two, were manufactured by the defendants and are at issue here, and did have batteries in them. (Docket No. 112, Dfs.'s Statement of Material Facts ("DSMF") ¶¶ 56-57.)

One of the defendants' detectors was installed in the kitchen, Model SA67D ("kitchen detector").  The second was a combination smoke and carbon monoxide alarm, Model SCOIN, and was located above the dining room doorway ("dining room detector"). (DSMF ¶ 47.)  It was given to William Hackert by his employer two months before the fire as a safety award.  (Docket No. 119, Pls' Resp. DSMF ¶ 50.)  According to plaintiffs, the dining room detector was placed at this location near plaintiff Sheila Hackert's bedroom to insure she would hear it in case of fire because she suffered a hearing impairment.  (PSMF ¶ 37.) Plaintiffs concede that they never personally read the manufacturer's label on either alarm and are unaware of whether or not it was read by the decedent William Hackert.  (Pls.' Resp. to DSMF ¶ 102-107.)  Defendants point out that the handling and placement of the detectors was not in accordance with label recommendations.  (DSMF ¶¶ 101-119.)

At approximately 4:30 a.m. on May 31, 2001, an overheated electrical cord ignited the living room of the Hackert home.  Id. at ¶ 8.  All four members of the family were home at

the time of the fire.  Id. at ¶ 3.  Sheila Hackert's bedroom was located on the first floor, adjacent to the dining room, in the approximately 20 by 50 foot home.  (PSMF ¶ 2.)  She was awakened during the fire by the family's golden retriever.  (DSMF ¶ 9.)  Finding thick black smoke in the dining room, she got down on her hands and knees and crawled to safety through a side door while screaming to her family members in the upstairs bedrooms. (Docket No. 112, Ex. C, Sheila Hackert Dep. p 357.)  Once outside, she pounded on the house in an effort to alert them before seeking help at a neighbors.  Id.

Plaintiff John Hackert awoke to his mother's screams from outside the house.  As he was getting out of bed, he heard his father saying, "Oh, my God. Oh, my God."  (John Hacket Dep. at 160.)  When he opened his bedroom door and walked out, he heard his sister saying, "Fire, fire, help!"  Id. at 166.  Retreating to his bedroom, he escaped by jumping through the second-floor window.  (PSMF ¶ 13.)

Firefighters arrived at around 4:45 a.m.  William Hackert was found lying on the bed in his room.  There is some evidence that he tried, unsuccessfully, to move the air conditioner in his window to escape the fire.  (Docket No. 118, Ex. A, Roby Report p. 18.)  Christine Hackert was found in her room.  A volunteer fire fighter stated that he found her under the front window, "and it was obvious that she attempted to get out."  (Docket No. 119, Fetterly Aff. Ex 11, Statement of Jason M. DeMania).  John Hackert learned of the deaths of his father and sister while being treated at the hospital.  (DSMF ¶ 24.)

The kitchen detector had melted off the wall and its battery was found among the detector remnants on the floor.  An investigator tested the battery and found that it was also sufficiently charged to power a detector.  Id. at ¶ 47.  The dining room detector was found melted into the carpet underneath the doorway where it was mounted - ten to fifteen feet

away from the origin of the fire. (PSMF ¶ 35.) The battery was in the detector and tested as sufficiently charged to power a detector. The parties dispute whether or not the battery was located within the detector in such a position as to power the alarm. Id. at ¶ 34.

It is not disputed that the defendants' alarms did not sound during the fire. (Docket No. 118, Def.'s Resp. PSMF ¶ 17.) It is also not disputed that the detectors were manufactured in accordance with industry standards. (Pls.' Resp. DSMF ¶ 40.) Plaintiffs allege that the detectors did not sound because they were defectively designed. Defendants assert, inter alia, that the detectors did not sound because the batteries were not properly inserted in the detectors.

There are at least two types of smoke and they are distinguished by temperature and particle size. There are also two types of smoke-sensing technology used in fire detectors: ionization and photoelectric. (DSMF ¶¶ 79, 80.) Ionization detectors are faster at detecting a higher-temperature smoke. Photoelectronic detectors are faster at detecting a lower-temperature smoke, generated by a smoldering fire. The Hackert's detectors were the ionization kind.

Expert testimony conflicts as to the nature of the Hackert fire. The plaintiffs' expert, Dr. Patrick Pagni ("Dr. Pagni") , presents a computer-generated fire model portraying a slow, smoldering fire that would produce smoke over a longer period of time, which was not detected in time by the ionization detector. Defendants' expert, Dr. Richard Roby (Dr. Roby"), presents a computer-generated fire model portraying a faster, hotter fire that would have triggered the alarms too late for plaintiffs' family members to escape anyway.

Plaintiffs' defect theory rests on the testimony of Dr. Don Russell who claims that detectors which contain only one form of sensing technology are inherently defective; he

maintains that fire detectors must contain both.  Actually, defendants do manufacture and market such a combination model.  Plaintiffs assert, and defendants have not disputed, that the defendants make up 85% of the fire detector market and receive regular consumer feedback as to the performance of the alarms.  Plaintiffs have submitted seven three-ring binders of customer complaints to demonstrate defendants' notice of the alleged design defect.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is granted only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Silver v. City Univ. of New York, 947 F.2d 1021, 1022 (2d Cir. 1991). The court will not try issues of fact on a motion for summary judgment, but, rather, will determine "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002).  Thus, "[s]ummary judgment may be granted if, upon reviewing the

evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Richardson v. Selsky, 5 F.3d 616, 621 (2d Cir. 1993).

A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57 (2d Cir. 1997). The Court is "to grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative." Schwimmer v. Kaladjian, 988 F. Supp. 631, 638 (S.D.N.Y. 1997) (citing Anderson, 477 U.S. at 249-50)

### B. Second Cause of Action - Strict Liability Claim

"To prevail on a claim for design defect under New York law, a plaintiff must demonstrate that (1) the product as designed was 'not reasonably safe'; (2) there was a safer, feasible alternative design at the time of manufacture; and (3) the defective design was a substantial factor in causing the plaintiff's injuries." Santoro v. Donnelly, 340 F. Supp. 2d 464, 484 (S.D.N.Y. 2004).

#### 1. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs argue that there is an overwhelming, unbroken chain of evidence that demonstrates that the detectors were powered at the time of the fire and the alarms did not sound. Plaintiffs assert that the failure to sound is sufficient to support a finding of liability as a matter of law against defendants for a design defect in the product. The argument fails on at least two grounds.

First, a fact-finder that credits defendants' interpretation of the evidence could reasonably conclude that the detectors were not powered at the time of the fire. There is no concrete, incontrovertible evidence that the detectors were powered. Defendants' expert, Dr. Roby, performed an analysis of the detectors after the fire and concluded that the dining room detector was not powered. Defendants intend to introduce photographs, and their own interpretation of them, to show that the batteries were dismantled. Moreover, the determination turns, at least in part, on the credibility of plaintiffs who concede that at least one detector in the house was dismantled due to nuisance alarms. At trial, defendants will have the opportunity to cross-examine plaintiffs' witnesses who claim the detectors were powered. Therefore, questions of fact preclude a finding of summary judgment.

Second, plaintiffs ignore their burden of proof. It is not sufficient for plaintiffs to simply demonstrate that the alarms did not sound. Plaintiffs must also demonstrate that but for the defective design of the ionization-only-technology alarm, William and Christine would have escaped. Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 110 (N.Y. 1983). Defendants have raised questions of fact as to whether the failure of the alarms to sound caused the deaths of William and Christine Hackert. Defendants argue that (1) the first floor detectors might not have alerted second-floor occupants, (2) it has not been determined how much time would have been gained if the detectors sounded when plaintiffs claim they should have, or (3) what the decedents would, or could, have done to escape if they had received an earlier warning.

As questions of fact preclude a finding of summary judgment for the plaintiffs on at least two grounds, it is not necessary to address the remainder of defendants' arguments. Plaintiffs' motion for partial summary judgment on the Second cause of action will be denied.

### 2. Defendants' Motion for Summary Judgment

Defendants argue that summary judgment is warranted on the product liability claim because plaintiff lacks a legally sufficient design defect theory and cannot establish causation.  The arguments will be addressed in turn.

### a.  Design Defect Theory

Assuming that the detectors were powered at the time of the fire, plaintiffs still need to show that the defendants acted unreasonably in marketing the ionization-only detector, or their defect theory will fail.  Defendants assert that plaintiffs cannot do this because (1) plaintiffs failed to conduct a risk/utility analysis of the detector and/or economic feasibility assessment of the alternative design and (2) cannot demonstrate unreasonableness of the design because defendants met all government standards in manufacturing the detectors.

Defendants claim that plaintiffs will not be able to meet their risk/utility burden because they have not conducted a risk-utility analysis.  Defendants cite Scarangella v. Thomas Built Buses, Inc. for the proposition that a court may dismiss a design defect case when, after consideration of the risk-utility factors, a court determines that plaintiff has failed to make out a prima facie case.  93 N.Y.2d 655 (N.Y. 1999).  The case is not dispositive here. The Scarangella court did not hold that the record must contain a risk-utility analysis in order for a plaintiff to avoid summary judgment.

The Voss court explained the parties burdens and the analysis involved in demonstrating that a design is not reasonably safe as follows:

> The plaintiff, of course, is under an obligation to present evidence that the product as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner.  The defendant manufacturer . . . may present evidence in opposition seeking to show that the product is a safe product - - that is,

> one whose utility outweighs its risks when the product has been designed
> so that the risks are reduced to the greatest extent possible while retaining
> the product's inherent usefulness at an acceptable cost. . . . The question
> for the jury, then, is whether after weighing the evidence and balancing the
> product's risks against its utility and cost, it can be concluded that the
> product as designed is not reasonably safe.

Voss, 59 N.Y.2d at 108-09 (citations omitted).  The Voss court went on to articulate factors to

be considered balancing the risk of a design against its utility and cost.

> Those factors may include the following: (1) the utility of the product to the
> public as a whole and to the individual user; (2) the nature of the product --
> that is, the likelihood that it will cause injury; (3) the availability of a safer
> design; (4) the potential for designing and manufacturing the product so
> that it is safer but remains functional and reasonably priced; (5) the ability
> of the plaintiff to have avoided injury by careful use of the product; (6) the
> degree of awareness of the potential danger of the product which
> reasonably can be attributed to the plaintiff; and (7) the manufacturer's
> ability to spread any cost related to improving the safety of the design.

Id. at 109.  Defendants' analysis of the Voss factors is not so compelling as to eliminate

questions of fact for the jury.  Without addressing each factor in detail, it is clear that the

factors do not necessarily favor the defendants.  A reasonable fact-finder could weigh in favor

of plaintiffs.

As to the first factor, defendants rely on the approval of regulatory agencies and

organizations to demonstrate the risk/utility of the product.  This assertion is undermined by

plaintiffs' argument that industry and regulatory approval is not sufficient to ensure the safety

of the detectors because defendants make up 85% of the fire detector market and receive

regular consumer feedback as to the performance of the alarms which they do not share with

regulators.   Thus, regulators may not have all the information they need in making proper

safety determinations.

Defendants dismiss the second factor - the likelihood of the product causing injury - claiming that fire detectors cannot cause injuries.  Safety devices and products rarely do. The question is whether the failure of the product was a substantial factor in the plaintiffs' injury or the cause of enhanced injury.  See Speller v. Sears, Roebuck & Co., 100 N.Y.2d 38, 41 (N.Y. 2003); supra p. 13, Part III.D.

As to the third factor, defendants cite Deere v. Goodyear Tire & Rubber Co., for the proposition that a plaintiff must demonstrate a feasible alterative design for the product and plaintiff has not done so.  175 F.R.D. 157 (N.D.N.Y. 1997).  Deere is not persuasive here.  In that case, the plaintiff alleged that Goodyear's tire design rendered its tires susceptible to explosion during inflation.  Id. at 160.  The tire was alleged to suffer from what was called the "zipper rupture phenomenon."  Id. at 161.  When asked if it was feasible to design the tire in a safer manner, plaintiff's expert admitted that he had not found any feasible alternative design existing in the market place at that time.  Id.  Here, the defendants actually manufacture an, admittedly more expensive, alternative design.  The combination detector is a sufficient submission of an alternative design to satisfy plaintiffs' burden.

As to the fourth and seventh factors, defendants argue that plaintiffs' lack of expert testimony, or other report in the record, as to the economic feasibility and marketing of an alternative product demonstrates that plaintiff will be unable to prove that the products are not reasonably safe.  No such expert testimony is required.  Arguments made on the these subjects are well within the understanding and purview of a jury.

Plaintiffs have submitted sufficient evidence to justify submitting its defective design theory to a jury.

### b. Causation

Turning to plaintiffs' burden of proving causation, defendants argue that plaintiffs lack sufficient information to support the assertion that the deceased would have or could have escaped if the detectors had sounded.  Defendants point out that no one knows exactly what woke the decedents; at what point during the fire they awoke; or what they did after they awoke.  (DSMF ¶¶19 - 40.)  Defendants also point put that people trapped in fires do not always behave logically or even rationally in attempting to escape.  See  Wilkerson v. Alexander, 208 Ga. App. 83, 86 (Ga. Ct. App. 1993).  Therefore, defendants argue, without evidence of what the decedents actually did during the fire, it would be impermissible speculation for a jury to conclude that the decedents would have escaped if alerted by a detector.

Defendants offer two cases in support of this argument.  The cases are not disregarded because they are not binding authority - the Georgia Court of Appeals and a United States District Court in Wisconsin - but rather because they are clearly distinguishable.  In Wilkerson, the court affirmed an award of summary judgment against a plaintiff who could not prove what caused a child's death in a house fire as a matter of law.  Id. at 86.  The evidence in that case was that the child woke up during the fire and had the opportunity to move about the house.  She moved from the couch where she had been sleeping to the bathroom.  Id. at 86.

In Werner v. Pittway Corp., the court also granted summary judgment against the plaintiff on the element of causation.  90 F. Supp. 2d 1018 (W.D. Wis. 2000).  In that case there was evidence that one or more alarms sounded during the fire, and several family members had sufficient time to move around the house and escape.  The father of the

household was found partially on the landing and partially on the basement stairs.  Id. at 1024.  Liability turned on whether he had been sleeping in the basement, and therefore actually needed to be a alerted to the fire by a detector, or had been upstairs with his family and entered the basement after the fire started.  He simply could not recall.  But it wasn't simply his failed memory which convinced the court that no reasonable fact finder would infer that he was sleeping there; the man's own testimony contradicted his assertion that he regularly slept in the basement.

Unlike Wilkerson and Werner, there is no evidence in this case that the injured moved about the house and missed the chance to escape.  The evidence supports an inference to the contrary.  John Hackert testified that by the time he was alerted to the fire, it was not possible to leave an upstairs bedroom, and it appears that both William and Christine Hackert may have attempted to exit by way of their windows.

Defendants' motion for summary judgment as to the Second cause of action will be denied as questions of fact remain as to both the "reasonably safe" determination of the ionization-only detector design and whether the detector's failure to sound was the proximate cause of William and Christine Hackert's deaths and other injuries suffered by the plaintiffs.

## C. Failure to Warn Claim (Stated as part of the First and Second Causes of Action)

In stating their negligence and strict liability claims, plaintiffs assert that defendants failed to warn plaintiffs that the ionization detectors may not sound a timely alarm in certain types of fires.  (Compl. ¶¶ 28, 29.)  To succeed on a failure to warn claim, plaintiffs must demonstrate that (1) the product caused the injury, (2) the manufacturer breached its duty to provide reasonable and adequate warnings, and (3) the absence of such warnings was the

proximate cause of the injury.  <u>Samuels v. American Cyanamid Co.</u>, 130 Misc. 2d 175, 185 (N.Y. Misc. 1985).

Defendants argue that plaintiffs cannot establish the proximate cause element of this claim because plaintiffs have conceded that they didn't read the product label.  <u>See Smallwood v. Clairol, Inc.</u>, Civ Act. No. 03-CV-8394, 2005 U.S. Dist. LEXIS 2726 (S.D.N.Y. February 18, 2005).  Plaintiffs argue that their failure to read the label or user's manual is not dispositive because their burden may be met by showing that plaintiffs would have heeded a "better" warning.  <u>Ramirez v. Komori Am. Corp.</u>, Civ. Act. No. 94-CV-3083, 1999 U.S. Dist. LEXIS 4300, at *23 (S.D.N.Y. April 6, 1999) (same admission not dispositive "where a trier of fact could still find that the plaintiff would have heeded a more prominent or urgent warning").

Plaintiffs complain generally that defendants failed to alert consumers of the limitations of ionization detectors, but do not address the methods which would be considered reasonable or adequate.  Thus, plaintiffs have not set forth any allegations that would support an inference that plaintiffs would have heeded a better warning.  If it is presumed that that warning would have to be located on the detector packaging, plaintiffs have not even suggested the deficiencies of actual packaging or how the defendants could have constructed the label differently such that plaintiffs, or William Hackert, would have read and heeded the better warning.  <u>See Derienzo v. Trek Bicycle Corp.</u>, 376 F. Supp. 2d 537, 568 (S.D.N.Y. 2005).  If it is to be presumed that an adequate warning would have taken some other form entirely, that presumption it is for the plaintiffs, not a court, to fashion, and plaintiffs have not made such an attempt.

It is also noted that Sheila and John Hackert have admitted that they have not acted upon the warning provided by the fire itself.  Sheila Hackert admitted that she never inquired

as to the type of alarms installed in her new home.  And neither plaintiff could identify the type of sensing technology in their current fire detectors.  (Sheila Hackert Dep. 371-72.)

Plaintiffs' failure to warn claims will be dismissed as plaintiffs have failed to articulate arguments or set forth allegations to support an inference that plaintiffs would have heeded a better warning to meet their burden of demonstrating causation.

### D. Fifth Cause of Action - Misrepresentation

"In New York, a plaintiff claiming fraudulent misrepresentation must prove that (1) defendant made a material false representation, (2) defendant intended to defraud plaintiff thereby, (3) plaintiff reasonably relied on the representation, and (4) plaintiff suffered damage as a result of such reliance."  Keywell Corp. v. Weinstein, 33 F.3d 159, 163 (2d Cir. 1994).

Plaintiffs generally allege that "defendants represented that said smoke detectors would sound an alarm to warn of the presence of smoke or fire in the residential properties." (Compl. ¶ 48.)  Defendants argue that the claim fails because plaintiffs failed to allege any particular misrepresentations.  They point out that, at deposition, neither Sheila nor John Hackert were able to point to any statements in any written materials, or otherwise, by any representatives of the defendants which they have reason to believe were false.

Plaintiffs' entire response to defendant's motion consists of a single sentence.  It reads: "Defendants' misrepresentation argument is irrelevant because the detector did not work."  (Docket No. 119, Pls.'s Opp. Mot. p. 3.)  This is insufficient opposition to save the claim and it will be dismissed as effectively abandoned.  See Douglas v. Victor Capital Group, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (collecting cases).

## E. **Eighth Cause of Action - Property Damage**

In the Eighth cause of action, plaintiffs allege that the failure of the detectors to sound caused "substantially increased destruction and physical damage." (Compl. ¶ 65.) Defendants argue that they cannot be held liable for such damage because the loss must be proximately caused by acts of the defendant and the smoke detector did not cause the fire.

This argument was rejected by the Second Circuit in Butler v. Pittway Corp., 770 F.2d 7, 9 (2d Cir. 1985). In Butler, the defendant moved for partial summary judgment on the plaintiff's claim for property damage arguing that "the losses sustained were 'economic losses' and therefore were not recoverable in a tort action." Id. at 9. The court addressed the question of awarding property damages in strict liability actions which might also be characterized as "economic loss" under a warranty claim as part of a contract action. After examining case law and differences in the policies behind contract and tort law, the court noted that the answer to the characterization turns on whether the product is "unduly dangerous." Id. at 12. "[W]hen a product is unreasonably dangerous by reason of a defect, the law imposes strict liability on the manufacturer for personal injuries and property damage fairly traceable to the defective product." Id. The Butler court characterized a defective smoke detector as such a product and permitted recovery for property damages. Id. at 11.

The plaintiff in Butler was given "an opportunity to offer evidence in an attempt to show that their injuries were enhanced as a result of the failure of the smoke detectors. " Id. at 10.

> [I]t is clear that a 'manufacturer's liability for injuries proximately caused by these defects should not be limited to [situations] in which the defect causes the accident, but should extend to situations in which the defect caused injuries over and above that which would have occurred from the accident, but for the defective design.'

Id. at 9-10 (quoting Caiazzo v. Volkswagenwerk, 647 F.2d 241, 245 (2d Cir. 1981) (applying

NewYork law)); see Syracuse Cablesystems, Inc. v. Niagara Mohawk Power Corp., 173

A.D.2d 138, 143 (N.Y. App. Div. 4th Dep't 1991) (allowing recovery where plaintiffs sought

damages for lost profits and property damage  - rental expense, lost subscriber revenue lost

installation revenue, employee overtime, lost sales commission, employee wages and

additional advertising expense - where a failure of the product was likely to produce a

catastrophic accident or enhance the damages should an accident occur); La Barre v.

Mitchell, 256 A.D.2d 850, 851 (N.Y. App. Div. 1998) (allowing recovery in tort for real and

personal property and loss of business income where plaintiff alleged a utility's negligence in

the operation and maintenance of a transformer).  Thus, New York law permits plaintiffs'

claim for property damage attributable to the failure of the detectors to sound due to a design

defect.

However, in this case, no reasonable jury could conclude that the failure of the

detectors to sound could be the cause of increased property damage beyond the damage

due to the fire itself.  Such a conclusion requires the inference that, had the detectors

sounded as plaintiffs allege they should have, some amount of damages could have been

prevented.

Plaintiffs' fire-modeling expert Dr. Pagni prepared an estimated time line of the

events of the fire.  (Docket No. 112, Ex. J,  Pagni Report)  He asserts that the incubation

phase of the fire started at approximately 4:28 a.m.  He does not speculate as the earliest or

most likely times that the detectors should have sounded, but calculates the latest times they

should have and concludes that William and Christine Hackert would have had plenty of time

to escape if the detectors had not been defective.  (Pagni p. 1.)  If Dr. Pagni's conclusions are

credited, a reasonable jury could conclude that the deaths of William and Christine Hackert could have been avoided, but not further property damage. Dr. Pagni does not address the issue of property damage in his report and plaintiff has not pointed to any other evidence in the record in support of the claim.

Dr. Pagni estimates that the dining room detector should have activated by at least 85 seconds after incubation or around 4:29 a.m. Id. at 4. The kitchen detector allegedly should have activated by at least 165 seconds after incubation or around 4:32 a.m. Id. At 4:35 a.m., when Dr. Pagni estimates that the puppy woke Sheila Hackert, the house was allegedly so full of smoke that she had to crawl on the floor to escape the house by 4:36. Dr. Pagni estimates that by 4:39 a.m., the suspended ceiling in the living room had fallen and the second-floor floorboards had ignited. At 4:39 a.m., the 911 dispatcher received notice of the fire. The fire department arrived between 4:44 a.m. and 4:48 a.m. and suppressed the fire by 5:00 a.m.

Even if the jury adopted plaintiffs' time line of the fire, it is not credible that the earlier notice would have provided sufficient time to have any significant effect on the fire suppression effort and prevented further property damage. Defendants' motion for summary judgment as to the Eighth cause of action will be granted.

### F. **Infliction of Emotional Distress**

Plaintiff John Hackert seeks damages for infliction of emotional distress in the First through Fifth causes of action. (Compl. ¶¶ 23, 31, 36, 45, 54.) A plaintiff may recover damages for emotional distress where a defendant's conduct is negligent in creating an unreasonable risk of bodily harm to a plaintiff and such conduct is a substantial factor in bringing about injuries. Bovsun v. Sanperi, 61 N.Y.2d 219, 223-224 (N.Y. 1984). The injury

must be "in consequence of shock or fright resulting from his or her contemporaneous observation of serious physical injury . . . inflicted by the defendant's conduct on a member of the plaintiff's immediate family in his or her presence."  Id. at 224.

Defendants argue for dismissal of the claim(s) on the grounds that John Hackert cannot prove instantaneous awareness of the deaths of his sister and father or that he was in the zone of danger as required by New York law.

It is not necessary that a plaintiff actually witness the injury to his family member. The plaintiffs in Bovsun did not actually witness the impact of the vehicles with their family members.  They were, however, instantly aware of the injury as they were present in the car. Bovsun, 61 N.Y. 2d at 233.   It is a reasonable inference that William and Christine Hackert sustained serious bodily injury at the time John Hackert claims to have heard them cry out. He testified that as he was getting out of bed he heard his father saying "Oh, my God. Oh, my God" and when he opened his bedroom door and walked out he heard his sister saying "Fire, fire, help!"  If credited by the jury, his testimony that he heard their cries as he discovered the house was smoke filled and/or heated to the point that he could not leave his room is sufficient to constitute instantaneous awareness of injury to them.

Defendants argue that John Hackert was not instantaneously aware of his family members injuries because he did not learn of their deaths until hours later.  Defendants cite Maney v. Maloney for the proposition that a plaintiff must be instantaneously aware of the deaths of his family members in order to recover.  101 A.D.2d 403 (N.Y. App. Div. 3d Dep't 1984).  First, Bovsun does not require that a plaintiff become immediately aware of a family members death; serious physical injury will suffice.  Id. at 224.  But Maney is also distinguishable on the facts of the case.  In Maney, the plaintiff stated that he came upon his

brother immediately after he was shot - not as he was shot - and failed to allege exactly where he was at the time of the shooting. Id. at 405. The plaintiff was given the opportunity to replead to include this information considering that the Bovsun decision had been rendered during the disposition of the plaintiff's case. Id. Here, John Hackert has alleged that he was physically present when the injury to his family members occurred.

Defendants also argue that John Hackert was not in the zone of danger as required under New York law. The zone of danger rule requires that the plaintiff was threatened with bodily harm in the same way as the individual ultimately injured. There is sufficient evidence for a jury to conclude that that is the case here. John Hackert was threatened by the same fire which killed his father and sister. He may not have been in the same car, as in Bovsun, but he was in imminent physical harm on the same, second-story, floor of a 20 x 50 home that was so impacted by the fire that he could not leave his room and had to jump out a second-story window to escape. If his testimony is credited, a jury may find that John Hackert was in the zone of danger when the injury to his family members occurred.

Defendants' motion for summary judgment as to John Hackert's claims for emotional distress will be denied. There is sufficient evidence to demonstrate that he was instantaneously aware of injury to his father and sister while in the zone of danger.

### G. **Punitive Damages**

Defendants argue that plaintiffs may not recover punitive damages because they cannot demonstrate willful or reckless conduct. Plaintiffs assert that defendants disregarded hundreds of consumer complaints over a period of two decades. Plaintiffs argue that their refusal to acknowledge or address the alleged product defect constitutes a conscious disregard for the safety of consumers. Defendants reply that the customer complaints are not

admissible because it cannot be demonstrated that they represent "substantially similar" circumstances to the instant fire and furthermore, they constitute inadmissible hearsay.  If the complaints are found to be substantially similar and are admitted into evidence at trial, a reasonable jury could conclude that the defendants were willful or reckless in their disregard of the notice of defect.  A decision as to the admissibility of the records will not be made at this time thus, defendants' motion will be denied without prejudice to renew at the time of trial.

Defendants' argument that proof of compliance with government standards precludes recovery of punitive damages is not sufficient to support their motion.  Plaintiffs argue that defendants kept the complaints from its regulators, which undermines their approval.  As noted above, plaintiffs have asserted that the regulators lacked significant information required for making a proper determination as to product safety.  Credible consumer feedback submitted to a manufacture with an 85% market share constitutes such significant information.

### IV. <u>CONCLUSION</u>

Questions of fact preclude a finding of summary judgment for either party on the <u>Second</u> cause of action, the strict liability claim.  However, plaintiffs' failure to warn claims, as part of the <u>First</u> and <u>Second</u> causes of action, will be dismissed as plaintiffs have failed to articulate arguments or set forth allegations to support an inference that plaintiffs would have heeded a better warning to meet their burden of demonstrating causation.  Plaintiffs effectively abandoned their misrepresentation claim.  None of plaintiffs' property damage was caused as a result of the alleged failure of the detectors and that claim will be dismissed.  Defendants' motion for summary judgment as to John Hackert's claims for emotional distress will be denied, as there is sufficient evidence to demonstrate that he was instantaneously

aware of injury to his father and sister while in the zone of danger. Plaintiffs' claim for punitive damages will be dismissed without prejudice.

Therefore, it is

ORDERED that

(1) Plaintiffs' motion for partial summary judgment as to the <u>Second</u> cause of action is DENIED;

(2) Defendants' motion for summary judgment as to the causes of action for Failure to Warn is GRANTED, and those claims are DISMISSED;

(3) Defendants' motion for summary judgment as to the <u>Second</u> cause of action is DENIED;

(4) Defendants' motion for summary judgment as to the <u>Fifth</u> and <u>Eighth</u> causes of action is GRANTED and those claims are DISMISSED;

(5) Defendants' motion for summary judgment as to the Infliction of Emotional Distress claims is DENIED; and

(6) Defendants' motion for summary judgment on the claim for punitive damages is DENIED without prejudice.


IT IS SO ORDERED.

David N. Hurd
District Judge


Dated:    November 15, 2005
          Utica, New York.