UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SHEILA HACKERT, Individually, and as
Administratrix of the Goods, Chattels, and
Credits of William P. Hackert, Jr., and Christine
M. Hackert, Deceased; and JOHN ANTHONY
HACKERT,

                              Plaintiffs,              1:03-CV-216

          vs

FIRST ALERT, INC.; and BRK BRANDS, INC.,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.    JAMES L. FETTERLY, ESQ.
Attorneys for Plaintiffs                  SALLY M. SILK, ESQ.
Suite 2800
800 LaSalle Avenue
Minneapolis, MN 55402-3394

HACKER & MURPHY, LLP                      JAMES E. HACKER, ESQ.
Attorneys for Plaintiffs
7 Airport Park Boulevard
P.O. Box 104
Latham, New York 12110-0104

COZEN O'CONNOR                            JAMES H. HELLER, ESQ.
Attorneys for Defendants                  TERRY M. HENRY, ESQ.
3rd Floor
1900 Market Street
Philadelphia, PA 19103

GOLDBERG SEGALLA LLP                      NEIL A. GOLDBERG, ESQ.
Attorneys for Defendants
Suite 400
665 Main Street
Buffalo, New York 14203

DAVID N. HURD
United States District Judge

<u>**MEMORANDUM DECISION and ORDER**</u>

**I. <u>INTRODUCTION</u>**

Sheila Hackert and her son, John Hackert, (collectively, "plaintiff") filed this action asserting claims against First Alert, Inc. and BRK Brands, Inc. (collectively, "defendant" or "BRK") for conduct related to the manufacturing of smoke detectors which failed to alarm during a fire at their home.  The fire resulted in the destruction of the house and the deaths of Sheila Hackert's husband, William P. Hackert, Jr. and daughter, Christine M. Hackert.

A jury trial was held from April 3, 2006, through April 21, 2006, in Utica, New York. After three days of deliberation, the jury determined that the design of defendant's ionization smoke detector was defective and that the defendant was negligent in failing to use ordinary care in the design, testing, marketing and sale of the alarm.  The jury awarded economic damages on account of the deaths of William and Christine Hackert and also awards for their conscious pain and suffering in the amount of $3 million each.  The jury found the plaintiffs comparatively negligent and allocated 35% of the fault to them.  In addition, the jury awarded plaintiffs $500,000 in punitive damages.

Defendant moves pursuant to Fed. R. Civ. P. 50(b), 59(a) and 59(e) for post-trial relief seeking judgment as a matter of law or, in the alternative, a new trial and remittitur. Plaintiff opposes.  Oral argument was heard on June 13, 2006, in Utica, New York.  Decision was reserved.

## II. DISCUSSION

Defendant moves for relief on numerous grounds.  All but one of these arguments were considered pre-trial or at trial, have now been reconsidered post-trial, and are without merit.  Only two arguments require discussion.  Defendant's argument that the jury awards for conscious pain and suffering for both decedents are against the weight of the evidence will be addressed.  In addition, it is necessary to clarify the nature and characterization of the testimony of Mr. Dennis Ware ("Ware").

### A. Awards for Conscious Pain and Suffering

"[S]tate law rather than federal law controls the question whether a verdict was excessive in a case tried in the diversity jurisdiction of the federal court."  Consorti v. Armstrong World Indus., 103 F.3d 2, 4 (2d Cir. 1995).  New York law addresses the propriety of jury verdicts as follows:

> In reviewing a money judgment in an action in which an itemized verdict is required by rule forty-one hundred eleven of this chapter in which it is contended that the award is excessive or inadequate and that a new trial should have been granted unless a stipulation is entered to a different award, the appellate division shall determine that an award is excessive or inadequate if it deviates materially from what would be reasonable compensation.

N.Y. C.P.L.R. 5501(c) (McKinney's 1995 & Supp. 2006).  While the statute purportedly applies to the state appellate divisions, it has been held that a federal trial court exercising diversity jurisdiction should use that same standard.  Id. (citing Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 437 (1996)).

"In applying this standard, a district court reviews the evidence presented at trial in support of the challenged damage award and compares the award to other New York cases in which evidence of similar injuries was presented."  Presley v. United States Postal Serv.,

317 F.3d 167, 173 (2d Cir. 2003) (citing Gasperini, 518 U.S. at 437-39).  "In determining damages for conscious pain and suffering experienced in the interval between injury and death, when the interval is relatively short, the degree of consciousness, severity of pain, apprehension of impending death, along with duration, are all elements to be considered." Regan v. Long Island R. R. Co., 128 A.D.2d 511, 512 (N.Y. App. Div. 2d Dep't 1987) (quoting Juiditta v. Bethlehem Steel Corp., 75 A.D.2d 126 (N.Y. App. Div. 4th Dep't 1980).

The defendant argues that the $3 million award for conscious pain and suffering of each decedent is excessive because they suffered for relatively brief periods of time. Plaintiff's expert Dr. Donald Jason testified that William Hackert suffered approximately three minutes and Christine Hackert approximately six minutes before succumbing to the heat, smoke, and fire.  However, the jury could reasonably have determined that the decedents suffered for longer periods of time.  It does appear that Christine suffered twice as long as William.

Plaintiff has not cited case law demonstrating verdicts in the range of $3 million dollars, but reiterates the circumstances of William and Christine Hackert's deaths.  The window air conditioner in William Hackert's room was displaced, which reasonably indicates an attempt to remove it to escape the fire and supports an inference that he had an apprehension of his own death.  Dr. Jason also provided expert testimony, which could reasonably have been credited by the jury, as to what he likely experienced in succumbing to heat exposure. Christine Hackert's body was found at the window of her bedroom, demonstrating some awareness of her circumstances and supporting an inference that she also had an apprehension of her own death.  The jury may also have credited the testimony of John Hackert who testified to hearing her screaming "Fire, fire, help."

- 4 -

Presuming that the jury credited testimony that the decedents were conscious and suffering for the alleged periods of time, the awards here must be reconsidered. Under New York case law, reasonable compensation for conscious pain and suffering of short durations is significantly lower than $ 3 million. See Givens v. Rochester City Sch. Dist., 294 A.D.2d 898, 899 (N.Y. App. Div. 4th Dep't 2002) ($1 million verdict reduced to $300,000 where decedent suffered less than one hour after sustaining a stab wound); Rodd v. Luxfer USA Ltd., 272 A.D.2d 535, 536 (N.Y. App. Div. 2d Dep't 2000) ($1 million verdict reduced to $300,000 where decedent suffered no more than 30 minutes after sustaining a chest wound due to an explosion); Glassman v. City of New York, 225 A.D.2d 658, 658 (N.Y. App. Div. 2d Dep't 1996) ($1.4 million award reduced to $500,000 where decedent suffered massive injuries but was only minimally conscious before death after being struck by a car); Torelli v. City of New York, 176 A.D.2d 119, 124 (N.Y. App. Div. 1st Dep't 1991) (court awarded $250,000 where decedent suffered between fifteen minutes and one hour from horrendous injuries after car collision); Walker v. New York City Transit Authority, 130 A.D.2d 442, 443 (N.Y. App. Div. 1st Dep't 1987) ($1 million award reduction to $600,000 affirmed where decedent suffered very briefly and his level of consciousness was unknown after he was struck by a train).

Even considering the jury's reasonable crediting of the evidence demonstrating conscious pain and suffering, in light of New York case law, the awards of $3 million each for conscious pain and suffering of William and Christine Hackert deviate materially from what would be reasonable compensation. Based upon the evidence at trial, defendant's motion for a new trial on the issue of those damages will be granted unless plaintiff consents to a remittitur of $1 million as to the conscious pain and suffering of William Hackert and $2 million

as to the conscious pain and suffering of Christine Hackert.  Considering the 35% comparative negligence allocation, this would result in a judgment of $650,000 for the conscious pain and suffering of William Hackert and $1.3 million for the conscious pain and suffering of Christine Hackert.

### B. Testimony of Dennis Ware

Defendant asserts that it was error to permit Ware's expert testimony.  Defendant objects to Ware's testimony on two grounds (1) that he was portrayed to the jury as an independent expert witness when he was actually retained by plaintiff, and (2) that he offered expert testimony as to the battery placement in the dining room detector during the time of the fire.

Ware was employed by Stauffer Investigative Services at the time of the Hackert fire and was hired by Allstate Insurance Company to conduct an origin and cause investigation. On direct examination it was pointed out to the jury that he was not employed by either party at the time of his investigation. (April 10, 2006, Trial Transcript of Morning Session ("A.M. Tr. __.") at 129-30.)[1]   His testimony involved relating his observations of the fire scene on June 2, 2003, only two days after the fire.  He explained his examination of the building, his interview with Sheila Hackert, and his observation of the artifacts found at the scene.  He related that he found the dining room ionization smoke detector with the battery in place.  He also made observations regarding the existence and non-existence of visible soot on the battery and detector.  (A.M. Tr. at 143.)

---

[1] The trial transcript referred to in consideration of post-trial motions is in the form of daily copy. The final pagination will vary.

During cross-examination, Ware revealed that he had met with plaintiff's counsel only days prior to trial, and that at least part of the meeting involved him examining the dining room detector, the battery and previous photographs.  This was the first time he had examined the detector without the battery.  Based on these observations, and the fact that the detector was found with the battery inserted, he concluded that the detector was powered at the time of the fire.  (A.M. Tr. 145.)

Despite Ware's initial introduction as an independent investigator, the jury was later made fully aware of the fact that part of his testimony was offered as an expert retained by plaintiff.   During cross-examination, defense counsel made it clear to the jury that Ware considered himself to be giving testimony on behalf of plaintiff.  (April 10, 2006, Trial Transcript of Afternoon Session ("P.M. Tr. ___.") at 6.)  It was also pointed out that he had not considered the soot markings, or lack thereof, on the battery and detector until the meeting with plaintiff's counsel only days before trial.  (P.M. Tr. 21.)  In closing statements, plaintiffs' counsel referred to the fact that they hired Ware four years after his initial investigation. (4/18/2006 Transcript Closing Statements at 93-94).  Moreover, the expert witness instruction charge to the jury explained:  "Dennis Ware was allowed to testify as initially retained by a third party and later retained by plaintiffs."  (Jury Charge 8.)  The initial portrayal of Ware as solely independent was corrected by defense counsel, plaintiff's counsel, and the court.  The defendant did not suffer any prejudice in this regard.

Turning to Ware's testimony that the battery was fully inserted in the detector at the time of the fire,  indeed, during direct examination plaintiff characterized his opinion in this regard as "expert" opinion.  Plaintiff's counsel asked Ware, if, based on his expertise, he believed the battery was fully inserted at the time of the fire, and he answered in the

- 7 -

affirmative. (A.M. Tr. 145.)  However, the parties' characterization of testimony is not

dispositive on the issue of the nature of the testimony.

First, defendant objects to Ware's comments on any soot markings he observed on

grounds that he was not disclosed as an expert on the topic and is otherwise unqualified to

offer an opinion.  Defendant explored the issue of expertise during cross-examination:

> Q: Although you have taken courses on investigating fires, do you have specific
> training in terms of soot pattern analysis?
> A: Soot pattern analysis?
> Q: Yes.
> A:  No, other than obvious signs when - - protected areas.  We are trained on
> protected areas, where objects lie and how to reconstruct based on those areas.
> Q: But you have no formal training in that area?
> A: Well, other than I have attended at various training facilities.
> Q: Well, you indicated you are not an expert with microscopic examination of soot
> patterns, etc.
> A: I testified to that, yes.
> Q: So would it be fair to say that at least with regard to that issue, that that's outside
> your area of expertise?
> A: Microscopic, yes.

(P.M. Tr. 25.)  Despite the parties' characterization of Ware as a purported expert in soot

analysis, making observations of protected and unprotected areas does not equate to using

expertise in microscopic analysis that defendant repeatedly referred to at trial.

More specifically, Ware explained his conclusion regarding soot deposits and the

battery placement in the dining room detector to defense counsel during cross-examination.

> A: It is based on the observation that it is a protected area.  It is what is called a
> protected area.  It is clean.
> Q: Let's understand how protected areas work.  We have seen a picture, and we will
> get to that, of the alarm in John's room.
> A: Yes.
> Q: And when that alarm was moved away, the area under it is still clean because
> something was covering it?
> A: Right.
> Q: Okay.

(P.M. Tr. 41.)  Ware did not apply any particular expertise in stating his observations of soot deposits.  In stating that the battery was inserted during the fire, he explained that the bottom of the battery compartment was not covered in soot and that he made this determination in a few moments with the naked eye, not a microscope.  The presence, or lack of, soot deposits may be understood by the jury as the process that was explained during Ware's testimony. Defense counsel conducted a thorough cross-examination scrutinizing his statements.  No counter expert was necessary to facilitate defendant's critique of Ware's common sense observations.

Second, Ware's conclusion that the battery was fully inserted at the time of the fire was based, in part, on the fact that the battery was found in the detector.  Accordingly, defendant objects to Ware's testimony on the issue of whether the battery would remain in the detector after the detector fell from the wall as it did in the fire.  Regardless of both party's attempts to characterize Ware's statements, the record reveals this was not expert testimony.  Actually, plaintiff effectively lifted the veil of expertise from the witness on this issue.  On re-direct, plaintiff's counsel asked Ware:

Q: And when you drop a detector or TV remote control or a cell phone, do sometimes batteries pop out?
A: Yes
Q: That has been your experience?
A: Yes
Q: Do you need to conduct any scientific analysis on that?
[Objection by defense counsel was overruled.]
A: No.
Q: Do you need to conduct a scientific analysis to understand that?
A: No.
Q: Is that common sense?
A: Yes.

(P.M. Tr. 71-72.)  This was Ware's only direct comment on the issue.  While of marginal usefulness to the jury, the testimony was not prejudicial to the defendant.  As this court ruled previously in excluding the testimony of Dr. Streit, the effect of a detector dropping to the floor in considering battery placement prior to the fall is not a subject requiring expertise.  Plaintiffs' counsel clarified that Ware was not proclaiming any such expertise, rather just common sense, which is of course the purview of the jury.

The defendant was not prejudiced by the fact that Ware's testimony as an independent investigator who made on the scene observations included certain observations which were on the margins of his expertise.  It was effectively clarified for the jury that Ware's protected area observations are not akin to scientific microscopic methods of soot analysis.  And, there was nothing prejudicial in his brief mention that batteries sometimes fall out of dropped objects.

## III.  **CONCLUSION**

The $3 million awards for conscious pain and suffering of William and Sheila Hackert deviate materially from what would be reasonable compensation.  The testimony of Dennis Ware did not prejudice the defendant as the nature of his testimony was effectively clarified for the jury.  The remainder of defendant's arguments regarding post-trial relief have been previously ruled upon and are without merit.

Therefore, it is

ORDERED that

1.  Defendants BRK Brands, Inc. and First Alert, Inc.'s motion for judgment as a matter of law or a new trial on all matters except damages for conscious pain and suffering to William P. Hackert, Jr. and Christine M. Hackert is DENIED;

2.  Defendants BRK Brands, Inc. and First Alert, Inc.'s motion for new trial on the issue of the damages for conscious pain and suffering to William P. Hackert, Jr. and Christine M. Hackert is GRANTED unless plaintiffs consent to a remittitur to $1 million as to the conscious pain and suffering of William P. Hackert, Jr. and $2 million as to the conscious pain and suffering of Christine M. Hackert, which would result in a judgment of $650,000 for the conscious pain and suffering of William P. Hackert, Jr. and $1.3 million for the conscious pain and suffering of Christine M. Hackert;

3.  The plaintiffs shall file under oath an acceptance or rejection of the remittitur by August 22, 2006;

4.  If the remittitur is accepted an appropriate amended judgment will be entered; and

5.  If the remittitur is rejected the judgment will be vacated and a trial date will be set on the sole issue of damages for the conscious pain and suffering of both William P. Hackert, Jr. and Christine M. Hackert.

IT IS SO ORDERED.

David N. Hurd
District Judge

Dated:   August 11, 2006
         Utica, New York.